**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br>GARY FELTS, d/b/a BLACK DIAMOND KENNEL,<br><br>      Defendant. | No. C11-4031-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*II. MOTION FOR SUMMARY JUDGMENT* . . . . . . . . . . . . . . . . . . . . . . . . . 8
   *A. Summary Judgment Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   *B. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

The Administrator of the Animal and Plant Health Inspection Service ("APHIS") brought an administrative action against defendant Gary Felts doing business as Black Diamond Kennel, for alleged violations of the Animal Welfare Act ("AWA"), 7 U.S.C.

§ 2131 *et. seq.* and the AWA's administrative regulations, 9 C.F.R. § 1.1 *et. seq.*, in connection with conditions in the kennel. A judgment was entered for a civil penalty of $18,938.00 against Felts in the administrative action. The United States ("the Plaintiff") filed this case against Felts seeking to enforce that judgment. Presently before me is the plaintiff's Motion for Summary Judgment

## I. INTRODUCTION AND BACKGROUND

### A. Factual Background

The following facts are undisputed.[1] Defendant Gary Felts is an individual operating a business known as Black Diamond Kennel. Black Diamond Kennel's facilities are located in Kingsley, Iowa. Felts was licensed and operating as a "dealer" as that term is defined in the AWA, 7 U.S.C. §2132(f).[2] On September 6, 2005, an APHIS

---

[1] Although defendant Felts has filed a resistance to plaintiff's Motion for Summary Judgment, he has not filed a response to plaintiff's statement of material facts as required by Local Rule 56(b)(2). Felts's failure to file a response constitutes an admission of those facts. *See* LR 56(b)("A response to an individual statement of material fact that is not expressly admitted must be supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the resisting party's refusal to admit the statement, with citations to the appendix containing that part of the record. The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact.").

[2] Under the AWA,

> The term "dealer" means any person who, in commerce, for compensation or profit, delivers for transportation, or transports, except as a carrier, buys, or sells, or negotiates the purchase or sale of, (1) any dog or other animal whether alive

(continued…)

representative inspected Black Diamond Kennel's facilities and found violations of the AWA. The APHIS found Felts failed to: (1) maintain programs of adequate veterinary care under the supervision of a veterinarian, in violation of 9 C.F.R. § 2.40; (2) failed to individually identify all dogs sixteen weeks of age or older being kept for breeding, in violation of 7 U.S.C. § 2141 and 9 C.F.R. § 2.50(a)(1)(2); (3) failed to maintain complete records showing the acquisition, disposition, and identification of animals, in violation of 7 U.S.C. § 2140 and 9 C.F.R. § 2.75(a)(1). The APHIS also found Felts violated 9 C.F.R. § 2.100(a) in the following ways: (1) the housing facilities were not kept free of an accumulation of trash and debris; (2) dogs in outdoor housing facilities were not provided with adequate protection from direct sunlight and the effect of wind, rain, and snow; (3) the surfaces of outdoor housing facilities were not impervious to moisture; (4) the primary enclosures had sharp points or edges which could injure the animals; (5) the floors were not constructed in such a manner to protect the animals from injury and to prevent the animals' feet and legs from passing through openings in the floor.

---

²(…continued)
or dead for research, teaching, exhibition, or use as a pet, or (2) any dog for hunting, security, or breeding purposes, except that this term does not include--

>  **(i)** a retail pet store except such store which sells any animals to a research facility, an exhibitor, or a dealer; or
>  **(ii)** any person who does not sell, or negotiate the purchase or sale of any wild animal, dog, or cat, and who derives no more than $500 gross income from the sale of other animals during any calendar year;

7 U.S.C. § 2132(f).

On August 25, 2006, an APHIS representative inspected Black Diamond Kennel's facilities and again found violations of the AWA. Based on this inspection, the APHIS found Felts violated 9 C.F.R. § 2.100(a) by the following: (1) the housing facilities were not kept free of excessive rust; (2) food receptacles were not maintained in a clean and sanitary condition and not kept in good repair; (3) water receptacles were not kept in a clean and sanitary manner; and (4) used primary enclosures were not cleaned and sanitized at least once every two weeks or as often as needed to prevent the accumulation of dirt, debris, food, waste, excreta and other disease hazards.

On May 31, 2007, the APHIS found violations of the AWA during an inspection of Black Diamond Kennel's facilities. The APHIS found Felts failed to maintain programs of adequate veterinary care under the supervision of a veterinarian, in violation of 9 C.F.R. § 2.40. The APHIS also found the following ten violations of 9 C.F.R. § 2.100(a): (1) the housing facilities were not kept free of an accumulation of trash and debris; (2) the housing facilities were not kept free of excessive rust; (3) failure to provide for the regular and frequent collection of waste material in order to minimize contamination and disease risks; (4) the surfaces of housing facilities were not impervious to moisture; (5) the floors were not constructed in such a manner to protect the animals from injury and to prevent the animals' feet and legs from passing through openings in the floor; (6) wire floors of primary enclosures were not strong enough to prevent them from bending or sagging; (7) water receptacles were not kept in a clean and sanitary manner; (8) failure to remove excreta and food waste daily from primary enclosures and from under the enclosures as often as necessary to prevent excessive accumulation; (9) used primary enclosures, as well as food and water receptacles, were not sanitized often enough to prevent the accumulation of dirt, debris, and excreta; and, (10) the premises surrounding the housing facilities were not kept clean and in good repair.

On August 22, 2007, the APHIS again inspected Black Diamond Kennel's facilities and found violations of 9 C.F.R. § 2.100(a).  Specifically, the APHIS found that: (1) food for the dogs was not maintained in such a manner as to prevent contamination; (2) the surfaces of housing facilities were not impervious to moisture; (3) primary enclosures for dogs were not maintained in good repair; (4) the floors were not constructed in such a manner to protect the animals from injury and to prevent the animals' feet and legs from passing through openings in the floor; and, (5) cats were not provided with an elevated resting surface in primary enclosures.  On November 27, 2007, an APHIS representative inspected Black Diamond Kennel's facilities and found the following violations of 9 C.F.R. § 2.100(a): (1) failure to provide access for inspection of records; (2) the housing facilities were not kept free of an accumulation of trash and debris; (3) food for dogs was not maintained in such a manner as to prevent contamination; (4) the animals were not provided with sufficient heat to protect them from extreme temperatures; (5) primary enclosures for dogs were not maintained in good repair, and (6) the floors were not constructed in such a manner to protect the animals from injury and to prevent the animals' feet and legs from passing through openings in the floor.

On March 20, 2008, and March 21, 2008, an APHIS representative attempted to inspect Black Diamond Kennel's facilities, but Felts failed to provide access for the inspections in violation of 9 C.F.R. § 2.100(a).  On June 17, 2008, an APHIS representative inspected Black Diamond Kennel's premises and records and found that Felts had failed to maintain complete records showing the acquisition, disposition, and identification of animals, in violation of 7 U.S.C. § 2140 and 9 C.F.R. § 2.75(a)(1).  On October 15, 2008, an APHIS representative attempted to inspect Black Diamond Kennel's facilities, but Felts failed to provide access for the inspection in violation of 9 C.F.R. § 2.100(a).

On March 9, 2009, an APHIS representative inspected Black Diamond Kennel's premises and records and found that Felts failed to maintain programs of adequate veterinary care under the supervision of a veterinarian, in violation of 9 C.F.R. § 2.40. Based on the March 9th inspection, the APHIS found the following violations of 9 C.F.R. § 2.100(a): (1) the hard surfaces of housing facilities were not cleaned often enough to sufficiently reduce disease hazards; (2) the animals were not provided with sufficient heat to protect them from extreme temperatures; (3) primary enclosures for dogs were not maintained so that they contained the dogs securely and protected them from injury; and (4) failure to remove excreta and food waste daily from primary enclosures and from under the enclosures as often as necessary to prevent excessive accumulation. On July 6, 2009, an APHIS representative inspected Black Diamond Kennel's facilities and found the following violations of 9 C.F.R. § 2.100(a): (1) housing facilities and areas used for storing animal food or bedding were not free from accumulation of trash, waste material, weeds, and junk; (2) failure to provide for the regular and frequent collection of waste material in order to minimize contamination and disease risks; (3) failure to remove excreta and food waste daily from primary enclosures and from under the enclosures as often as necessary to prevent excessive accumulation; (4) used primary enclosures, as well as food and water receptacles, were not sanitized often enough to prevent the accumulation of dirt, debris, and excreta; and, (5) an effective program for control of insects, parasites, and other pests was not established and maintained so as to promote the health of the animals and reduce contamination.

On January 4, 2010, the Administrator of APHIS filed an administrative complaint against Felts for willfully violating the AWA. The administrative complaint was served on Felts on January 4, 2010. On February 3, 2010, Felts' requested an extension of time to file his answer. Felts's request was granted and he was given until February 26, 2010,

in which to file his answer. Felts, however, did not file an answer to the administrative complaint. On June 5, 2010, a United States Department of Agriculture Administrative Law Judge entered a Default Decision and Order (Administrative Decision") against Felts ordering him to cease and desist from violations of the AWA, suspending his license, and imposing a civil penalty of $18,938.00. A hearing clerk sent a cover letter and the Administrative Decision to Felts by certified mail. On June 14, 2010, Felts received the letter and Administrative Decision. Felts did not appeal the Administrative Decision and it became final and effective on July 19, 2010, pursuant to 7 C.F.R. §§ 1.142 and 1.145. As of February 7, 2011, the total amount Felts owed on the Administrative Decision was $19,474.57. This amount includes principal of $18,938.00, together with interest of $63.12 to January 5, 2011, and penalties of $473.45 to January 31, 2011. Interest continues to accrue at an annual rate of one percent and penalties continue to accrue at an annual rate of six percent. On February 24, 2011, a final demand for payment of the civil penalty was sent to Felts. No payments have been received from Felts.

### B. *Procedural Background*

On March 25, 2011, plaintiff United States, on behalf of the United States Department of Agriculture, Administrator of APHIS, filed its complaint seeking collection of a June 5, 2010, civil penalty entered against defendant Felts for various violations of the AWA. The plaintiff has filed a Motion for Summary Judgment. In its motion, the plaintiff argues that it has a civil penalty assessed by final order against Felts which it is entitled to collect. Felts filed a resistance to plaintiff's Motion for Summary Judgment but offered no explanation for why the civil penalty was not enforceable against him.

## II.  *MOTION FOR SUMMARY JUDGMENT*
### A.  *Summary Judgment Standards*

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'"  *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Thus, "the substantive law will identify which facts are material."  *Anderson*, 477 U.S. at 248.  An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).

As the Eighth Circuit Court of Appeals has explained,

> As the Eighth Circuit Court of Appeals has explained,
> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, ---U.S. ----, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) *quoting Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The nonmovant "must do more than simply show that

> there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, *quoting Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (*en banc*).

Therefore, I will apply these standards to the plaintiff's Motion for Summary Judgment.

### *B. Analysis*

While Felts "resists" the plaintiff's Motion for Summary Judgment, he has not asserted any grounds or basis for not granting the motion. Any collateral attack on the Administrative Decision must necessarily fail, because I do not have jurisdiction to void the Administrative Decision. The order of the Secretary of Agriculture assessing a penalty "shall be final and conclusive unless the affected person files an appeal from the Secretary's order with the appropriate United States Court of Appeals." 7 U.S.C. § 2149(b). Upon any failure by a person to pay a penalty assessed under 7 U.S.C. § 2149(b), a civil action may be commenced in any United States district court in which such person is found or resides.[3] 7 U.S.C. § 2149(b). Any dealer aggrieved by a final order

---

[3] Section 2149(b) provides in pertinent part:

> Upon any failure to pay the penalty assessed by a final order under this section, the Secretary shall request the Attorney
>
> (continued…)

issued pursuant to 7 U.S.C. § 2149 may, "within 60 days after entry of such an order, seek review of such order in the appropriate United States Court of Appeals . . . and such court shall have exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of the Secretary's order." 7 U.S.C. § 2149(c).  It is undisputed that Felts failed to exercise his appeal rights within the 60 day time period.  Thus, pursuant to 7 U.S.C. § 2149(c), the Administrative Decision is the "final and conclusive" order of the Secretary of Agriculture.   The AWA indicates that the Eighth Circuit Court of Court of Appeals has "exclusive" jurisdiction to set aside or determine the validity of the Administrative Decision.  *See* 7 U.S.C. § 2149(c).  Accordingly, I lack jurisdiction to "void" or set aside the Administrative Decision.

Because Felts failed to file a timely answer to the administrative complaint, he is deemed to have admitted the allegations of the administrative complaint.  *See* 7 C.F.R. §§ 1.136, 1.147(c)(1).  The administrative complaint detailed Felts's numerous violations of the AWA, including several repeated violations resulting from his failure to correct previously identified AWA violations.  Felts's failure to bring Black Diamond Kennel's facilities into compliance after repeated warnings "also makes clear that his violations were willful."  *Pearson v. United States Dep't of Agric.*, 411 Fed. App'x 866, 872 (6th Cir. 2011).  An AWA license may be revoked following a single, willful violation of the Animal Welfare Act.  S*ee Cox v. United States Dep't of Agric.,* 925 F.2d 1102, 1105 (8th

---

[3](…continued)
    General to institute a civil action in a district court of the United States or other United States court for any district in which such person is found or resides or transacts business, to collect the penalty, and such court shall have jurisdiction to hear and decide any such action.

7 U.S.C. § 2149(b).

Cir. 1991).  Thus, the record supports the Secretary of Agriculture's decision to sanction Felts for violations of the AWA.  *See* 7 C.F.R. §§ 1.136(c), 1.139.  Moreover, the Secretary of Agriculture's choice of sanction is not "'unwarranted in law or unjustified in fact.'" *Balice v. United States Dep't of Agric.,* 203 F.3d 684, 689 (9th Cir. 2000)(quoting *Bosma v. United States Dep't of Agric.,* 754 F.2d 804, 810 (9th Cir. 1984) (citing in turn *Butz v. Glover Livestock Comm'n Co.,* 411 U.S. 182, 185-88 (1973)); *see also* 7 U.S.C. § 2149(a) & (b); 7 C.F.R. § 3.91(b)(2)(v).  Therefore, the plaintiff's Motion for Summary Judgment is granted.

## III.  CONCLUSION

For the reasons discussed above, the plaintiff's Motion for Summary Judgment is **granted.**  THEREFORE, I order judgment be entered in favor of the United States and against Gary Felts in the sum of $18,938.00, plus interest and penalties from June 3, 2010, the date of the Administrative Decision.  Interest continues to accrue at an annual rate of one percent and penalties continue to accrue at an annual rate of six percent.  Judgment shall enter accordingly.

**IT IS SO ORDERED.**

**DATED** this 17th day of January, 2012.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA